ARNOLD & DUBOSE, plaintiffs in error, *vs.* GEORGIA RAILROAD AND BANKING COMPANY, defendant in error.

1. An action against a railroad company to recover the excess of a payment for freight beyond what is allowed to be charged by the charter of the company, may be brought under the Act of March 4, 1869, in the county from which the articles were shipped, that being the place where the contract for shipment was made, although the payment was made in another county.

2. The Georgia Railroad and Banking Company, under the 12th section of its charter, can only charge for freight fifty cents per one hundred pounds, on heavy articles, for one hundred miles, and in proportion to that rate for a less distance than one hundred miles.

3. If payment beyond the rate specified in the charter be made voluntarily by the shipper, through mere ignorance of the law, or paid " where the facts are all known, and there is no misplaced confidence, and no artifice, or deception, or fraudulent practice is used by the other party," an action will not lie to recover it back.

Railroads. Venue. Charter. Freight. Contracts. Before Judge ANDREWS. Wilkes Superior Court. May Term, 1873.

Arnold & DuBose *vs.* The Georgia Railroad and Banking Company.

Arnold & DuBose brought complaint against the Georgia Railroad and Banking Company for $2,362·50, overcharge in freight on three million one hundred and fifty thousand pounds of cotton, shipped on the cars of the defendant for a distance of seventy-five miles. The defendant pleaded the general issue and to the jurisdiction of Wilkes Superior Court.

The evidence made the following case: The amount of cotton was shipped, as alleged, at Washington, Wilkes county, to be conveyed by the defendant to Augusta, Richmond county, a distance of seventy-five miles. The freight charged by the defendant was forty-five cents per hundred pounds. The freight had been paid in Augusta. The agent of defendant at Washington had no instructions to receive freight or to refuse it. Had it been offered he would have received it. The former charge was thirty-three cents per one hundred pounds; from the year 1865 to the present time, during which period plaintiff's cotton wàs shipped, the charge has been at the rate of forty-five cents per one hundred pounds. The charge by wagon, before the railroad was built, was fifty cents per hundred pounds. The plaintiffs, before the commencement of suit, demanded from the defendants seven and one-half cents on each one hundred pounds of cotton shipped, as being an overcharge and illegal, under its charter. Payment was refused.

It was agreed that the case should go to the jury on both pleas, subject to the charge of the Court.

The Court charged that under the facts proved, the Superior Court of Wilkes county had no jurisdiction of the case; that if said Court did have jurisdiction, there was nothing in the charter of the defendant prohibiting the charges of freight as made.

The jury returned a verdict for the defendant.

The plaintiffs except to the aforesaid charge of the Court, both as to jurisdiction and as to the construction of the charter of the defendant.

R. TOOMBS, for plaintiffs in error.

W. M. & M. P. REESE; W. H. HULL; E. H. POTTLE; HILLYER & BROTHER, for defendant.

TRIPPE, Judge.

1. Section 3329 of the Revised Code, as amended by the Act of March 4th, 1869, is as follows: " All railroad companies shall be liable to be sued in any county in which the cause of action originated, by any one whose person or property has been injured by such railroad company, their officers, agents or employees, for the purpose of recovering damages for such injury, and also on all contracts *made or* to be performed in the county where the suit is brought:" New Code, section 3329. The section, before it was amended by the Act of 1869, has, after the word "employees," the following words, " in or by the running of the cars." These words were stricken out by the Act of 1869, and also the words, " made or " were inserted by that Act. Previous to its passage no action could be brought for damages in the county where the damage occurred, unless it was caused " by the running of the cars," and no action on a contract unless the contract was to *be performed* in the county where suit was brought. Of course this statement has no reference to the right of every plaintiff to sue the company in the county where its chief office of business is located. Before the statutory change as to the venue of suits against railroads, the action was forced to be brought in the county where that office was. The Legislature, seeing the burden that this rule imposed on the citizen, compelling him to go fifty or one hundred or two hundred miles to assert his claim, commenced, many years ago, to give further rights to plaintiffs in such cases. Several Acts have been passed, and at last it was enacted that the action might be brought where the injury was done by the running of the cars, or where the contract was to be performed. To add still farther to the facilities of claimants living on a long line of road, and doubtless to cover, as nearly as possible, all cases of that sort, the Act of 1869, by striking out the words, " in and by the run-

ning of the cars," intended to include all kinds of injury to person and property done by railroad companies, their agents, officers or employees, and by adding the words, "or made," to give a right of action on all contracts, where they were made or were to be performed  In thus looking at these efforts on the part of the Legislature, we do not think, at least a majority of this Court do not, that it would be within the spirit and meaning of the Act of 1869 to hold in such cases as this, and, in fact, in all cases founded on or growing out of the contract and resting directly upon the contract, that the action could not be brought where such contract was made. We think the true intent and meaning of the Act of 1869, when construed in the light of the old law, the mischief and the remedy, would sustain this action in the county of Wilkes, in so far as the question of jurisdiction is involved.

2. The next question is, whether the following words in the charter of the Georgia Railroad, to-wit : "that the charge of transportation or conveyance shall not exceed fifty cents per hundred pounds on heavy articles, and ten cents per cubic foot on articles of measurement, for every one hundred miles," impose a *pro rata* limitation on distances less than one hundred miles.  For myself, I do not hesitate to state that this question is one of some difficulty, though a majority of the Court have no hesitancy on their minds.  The argument on this point was able and ingenious, but it is unnecessary to review it here.  There are two other provisions in the same section, making direct reference to the one quoted, which determines the matter, at least so far as to justify the decision pronounced.  The first of these is, "that the said company may, when they see fit, rent or farm out all, or *any part,* of their said exclusive right of transportation or conveyance of persons on the railroad, or railroads, with the privilege to any individual or individuals, or other company, and for such term as may be agreed upon, *subject to the rates above mentioned.*"  Now, it is pertinent to remark that the charter granted the right to build branch railroads to points less than one hundred miles distant, and that these branches could

not be of that length.   If the rates that had been prescribed were not intended to be proportionately applied to distances under one hundred miles, how could the lease of a *branch road*, or *part of the road* of a less length than *one hundred* miles, be "subject to the rates above mentioned?"   If those rates were intended to govern the lessees, as to distances less than one hundred miles, it could only be by apportioning the rates to the distance; and if the lessees were to be thus controlled by such an apportionment, it was because the charter intended to apply them to the whole road.   The second provision referred to is, "it shall be lawful for the said company to use or employ any section of their intended railroad, *subject to the rates before mentioned*, before the whole shall be completed, and in any part thereof which may afford accommodation for the conveyance of persons, merchandize or produce."   The same remark is appropriate to this which was made in reference to the provision about leasing.   Each implies that less than one hundred miles of the road might be used, more or less permanently ; but if it was, the owner or the lessee, as the case might be, should be subject to the rate of fifty cents per hundred pounds for one hundred miles.   And this could not be, unless a certain proportion of that rate was taken for a corresponding proportion of that distance.

3. The defendant further insists, that even if the amount charged and paid by plaintiffs was beyond the charter rates, yet it was paid voluntarily by them, and that there was no artifice, fraud, or deception on the part of defendant.   This presents the question whether money, paid voluntarily by one party to another, with knowledge of all the facts, can be recovered back, on the ground that the party receiving the money could not have enforced payment by law.   No one will deny that if the party so paying, did so with knowledge, that it could not have been collected by legal process, he cannot recover it back.   Money paid for a gaming debt is an exception, by special statute.   Usury paid is another exception ; but that not to the extent to which the party paying could have, by law, prevented its collection.   He could, by setting

up·the defense of usury, defeat the collection of all but the original principal. If he voluntarily pay principal and usury, he could only recover back the excess of the usury over the legal interest. I speak of the law as it formerly stood; and even when, by statute, the whole contract was void on account of usury, still if the debtor paid the whole, he could reclaim nothing but what was over the lawful interest. The authorities to the effect that money paid voluntarily, without mistake of fact, though in ignorance of the law, cannot be recovered back, are numerous and almost without exception. In *Culbreath vs. Culbreath,* 7 *Georgia,* 64, in an elaborate decision, showing that there might be a recovery where it was paid under a *mistake* of law, the principle is yet admitted that if it be from *ignorance* of law, there can be no recovery. And the great effort in that case is to set up and show that there is a difference between *ignorance* and *mistake* of the law. This principle has been, to a certain extent, embodied in the Code: See sections 3121 to 3126, inclusive, new Code; section 3121 is, "mere ignorance of the law on the part of the party himself, where the facts are all known, and there is no misplaced confidence, and no artifice, or deception, or fraudulent practice is used by the other party, either to induce the mistake of law, or to prevent its correction, will not authorize the intervention of equity." Section 2636 provides, "mistake of law, if not brought about by the other party, is no ground for annulling a contract of sale. Mistake of a material fact may, in some cases, justify a rescision of the contract, mere ignorance of a fact will not." A strong writer has said, that to allow the doctrine that ignorance of law is a ground of defense, would overturn the foundations of every system of jurisprudence. Bateman on Commercial Law, 26; and Judge Story says: "As every man is presumed to know the law, and to act upon the rights which it confers, when he knows the facts, it is culpable negligence in him to do an act or make a contract, and then set up his ignorance as a defense: 1 Story's Equity, section 140. A few of the numerous cases determining the principle involved in this case are simply referred to:

12 East, 38; 2 *Ibid.*, 469; 5 Taunt, 144; 8 Wheaton, 215; 2 John. Ch., 51; 9 Cowen, 674; 1 Wend., 355; 10 Peters, 138.

It is true that in some of those cases no distinction is taken between *ignorance* and *mistake* of law. They seem to be held as equivalent terms, and the right to relief is denied in either instance. Others of them draw a distinction, as did this Court in *Culbreath vs. Culbreath, supra,* and maintain the right to relief where there has been a *mistake* of law. In the case under consideration the plaintiffs were paying the money sued for during the years 1868 to 1872, inclusive. They now set up that the defendant had no right by law to make the charges which they paid; in other words, that the defendant charged and they paid more than the defendant was, by its charter, allowed to charge. Why, then, did they pay it? If voluntarily, or by agreement, knowing the law, no one can say they are entitled to recover it back. If voluntarily, but in ignorance of the law, we have seen that it is not sufficient, neither under the principles contained in the Code, or under the decisions referred to. If there was any fraud, artifice or deception practiced by defendant, it should have been shown. Under this great weight of authority, both statutory and judicial, it may well be said, as was said by the Judges pronouncing the opinion of the Supreme Court of New York, in *Clarke vs. Dutcher:* " Although there are a few *dicta* of eminent Judges to the contrary, I consider the current and weight of authorities as clearly establishing the position, that where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. He shall not be permitted to allege his ignorance of the law; and it shall be considered a voluntary payment:" 9 Cowen, 681. This, then, being the law of this case, although the Court below erred on the question of jurisdiction, we are constrained to affirm the general judgment, as the verdict must necessarily, under the evidence, have been what it was, and this is in accordance with

numerous decisions of this Court: 41 *Georgia*, 16 ; 42 *Georgia*, 244.

Judgment affirmed.

McCAY, Judge, concurring.

I concur, except on the point of jurisdiction of the Superior Court of Wilkes county. As the cause of action was not on the contract, but on the implied assumpsit arising on the payment of the money to repay it, and as the money was paid, in fact, in Richmond county, the suit, if a good suit, should have been in Richmond county.