28585. AMERICAN SURETY COMPANY *v.* GROOVER *et al.*

DECIDED MARCH 12, 1941. ADHERED TO ON REHEARING APRIL 5, 1941.

*Adams, Douglas & Brennan,* for plaintiff.

*O. E. Bright, Perry Brannen,* for defendants.

BROYLES, C. J. In its petition the American Surety Company of New York sued Mrs. Elizabeth L. Groover, W. M. Coney & Company Inc., Louis A. Brantley "individually and as . . receiver . . in the case entitled Elizabeth L. Groover vs. Robert N. Groover and W. M. Coney & Company Inc.," and Firemen's Fund Indemnity Company of San Francisco, California, "as surety upon the said receiver's bond," to recover $1580.25. The defendants demurred generally and specially. The plaintiff offered to amend its petition by substituting therefor a petition which was substantially the original petition, with a few amplifications thereof. The court allowed the amendment "subject to objection and/or demurrer." The defendants then renewed "each and every ground of the demurrers heretofore filed . . to the petition as amended," and objected "to the allowance of said amendment on each and every ground set forth in the demurrers herein referred to." The court adjudged that "all grounds of the general demurrer and renewal thereof . . are sustained, and the plaintiff's petition dismissed." The American Surety Company excepted.

The first four paragraphs of the petition as amended set out the parties to the case as above indicated. By paragraph, the remainder of the amended petition is substantially as follows: 5. Prior to January 10, 1936, W. M. Coney & Company Inc. claimed that plaintiff was indebted to it; and on said date plaintiff and said company agreed to settle said claim for $1500, and plaintiff delivered to Robert N. Groover, president of said company, its draft for $1500 payable to W. M. Coney & Company Inc. 6. On January 11, 1936, Mrs. Elizabeth L. Groover filed a petition in the superior court of Chatham County, Georgia, against W. M. Coney & Company Inc. and Robert N. Groover, in which she prayed for the appointment of a temporary receiver. 7. On January 11, 1936, said court appointed Louis A. Brantley temporary

receiver for all of the assets of W. M. Coney & Company Inc., and on the same day said Brantley qualified as such receiver and gave bond with Firemen's Fund Indemnity Company as surety. 8. In all of said proceedings, and at all times herein mentioned, the law firm of Orrie E. Bright and Perry Brannen acted as attorneys for Mrs. Groover. 9. Said law firm, acting for Mrs. Groover and for said receiver, immediately telegraphed plaintiff, notifying it of the appointment of said receiver and requesting it not to honor said draft, and furnished plaintiff with a copy of the order appointing the receiver. Thereafter, on January 17, 1936, said law firm telegraphed plaintiff as follows: "On January fourteenth we mailed you certified copy receivership proceedings [against] W. M. Coney Company and Robert N. Groover. Please wire if you will refuse payment of draft for fifteen hundred dollars and deliver same to receiver or to Elizabeth L. Groover to whom all assets have been assigned." 10. "Having been induced to believe that . . Elizabeth L. Groover and . . said receiver were authorized to require . . petitioner to stop payment of the said draft and to issue a duplicate thereof . . , petitioner, on January 18, 1936, issued its duplicate draft payable to O. E. Bright and Perry Brannen, attorneys for receiver of W. M. Coney & Company Inc., for $1500, which draft . . petitioner paid upon presentation thereof duly endorsed." . . 11. The proceeds of said draft went into the hands of said receiver. 12. During the latter part of January, 1936, Mrs. Elizabeth L. Groover and her husband, Robert N. Groover, decided to settle said receivership proceedings. Said proceedings were never served upon W. M. Coney & Company Inc., or upon Robert N. Groover. Neither of said defendants ever entered an appearance. Mrs. Elizabeth L. Groover caused this court to pass an ex parte order disposing of said proceedings, and all funds in the hands of the receiver, including the proceeds of the said draft, were turned over to Mrs. Groover. The said settlement and disposition of the said cause were without the knowledge or consent of plaintiff. A complete copy of said receivership proceedings is hereunto attached and marked "exhibit C." 13. Thereafter W. M. Simmons sued plaintiff on said draft of January 10, 1936, "in the court of common pleas of Jasper County, South Carolina. . . A copy of the said suit and all proceedings connected therewith is hereto attached, and marked 'exhibit A.'"

14. That petitioner immediately vouched the said defendant to defend said suit, a copy of the said voucher being hereto attached, and marked "exhibit B." 15. Said W. M. Simmons obtained a final judgment against this petitioner in the said court of common pleas of South Carolina for $1580.25, which judgment petitioner paid in full. 16. Said proceedings in the superior court of Chatham County, Georgia, did not authorize the said defendants to stop payment upon said draft of January 10, 1936, and to accept a new draft in lieu thereof. and W. M. Simmons was a bona fide purchaser before maturity of the said draft dated January 10, 1936, and was entitled to collect the same, as alleged in said South Carolina suit. 17. Robert N. Groover is not made a party to this cause, because he is a non-resident of Georgia and can not be served with this suit.

Paragraph 10 of the petition alleges generally that the second draft was issued because plaintiff was "induced to believe that . . said Elizabeth L. Groover and . . said receiver were authorized to require . . petitioner to stop payment of the said draft [of January 10, 1936] and to issue a duplicate therefor." The foregoing general averment is based on the allegations of fact that the attorneys, "acting for . . Mrs. Elizabeth L. Groover and . . said receiver, immediately telegraphed . . petitioner notifying it of the appointment of . . said receiver, and requesting it not to honor the said draft, and furnished . . petitioner with a copy of the order appointing the receiver," and thereafter, on January 17, 1936, telegraphed petitioner that they had mailed it a certified copy of the receivership proceedings, and requested it to "please wire if you will refuse payment of draft for fifteen hundred dollars and deliver same to receiver or to Elizabeth L. Groover to whom all assets have been assigned."

"It is an established rule of construction that conclusions based on specific allegations are to be disregarded where the particular facts alleged either contradict them or fail to support them." *Green* v. *Spears,* 181 *Ga.* 486, 490 (182 S. E. 913) ; *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867). In the instant case, if the plaintiff had undertaken to do no more than was requested of it, to wit, "refuse payment of draft [of January 10, 1936] . . and deliver same to receiver or to Elizabeth L. Groover," the present case would never have been brought. Viewing the petition in this

light, the facts alleged fail to support the above general conclusion reached in paragraph 10 thereof. Furthermore, so far as the petition discloses, the plaintiff, upon a mere request and without being impelled by any emergency or duress, and without further inquiry or investigation, issued the second draft, with knowledge that its proceeds would go into the hands of Mrs. Groover. It of course knew that there was then outstanding a negotiable draft given by it to cover the identical debt for which the second draft was given; and we think it is fair to conclude that it knew that the first draft would be collectible in the hands of "a bona fide purchaser before maturity," as the petition subsequently alleges it was. The statement in the telegram of January 17, 1936, that "all assets" had been assigned to Mrs. Groover apprised plaintiff of the fact that the proceeds of the second draft would be paid to her. Clearly the present action is not based on fraud. But even if we are in error in concluding that the averments of fact in the petition do not support the aforesaid general averment in paragraph 10 thereof, we are still of the opinion that the general demurrer was properly sustained; and we think that this view is supported by the following ruling in *Arnold & DuBose* v. *Georgia Railroad &c. Co.,* 50 *Ga.* 304 (3) : "If payment beyond the rate specified in the charter be made voluntarily by the shipper, through mere ignorance of the law, or paid 'where the facts are all known, and there is no misplaced confidence, and no artifice, or deception, or fraudulent practice is used by the other party,' an action will not lie to recover it back." The Code, § 20-1007, declares that such a voluntary payment "can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." The petition in the instant case does not allege that the payment sought to be recovered was made in ignorance of the law or of the facts. In our opinion the allegations of the petition set forth no cause of action and the action was properly dismissed on general demurrer. Conceding that the final decree in the receivership proceedings was invalid, for the reason that the court was without authority to enter it before the appearance term, the judgment dismissing the action on general demurrer should not be reversed, because a reversal would be fruitless, since the

petition as amended, properly construed (most strongly against the plaintiff), showed that the plaintiff's voluntary payment could not be recovered; and the result would have been the same if the final decree in the receivership proceedings had been entered at the proper term of the court. See, in this connection, *Eve* v. *Crowder*, 59 *Ga.* 799; *Kantzipper* v. *Kantzipper*, 179 *Ga.* 850, 852 (177 S. E. 679), and cit.

Judgment affirmed. *MacIntyre and Gardner, JJ., concur.*

ON REHEARING.

GARDNER, J. The plaintiff insists that what it "did urge and now urges is that when a voluntary payment is made under a mistake of law to a receiver, the payor is entitled to recover the same." The premise is conceded accordingly by it that the payment was voluntary. From this insistence and from an analysis of the petition, it must be held that the plaintiff was neither ignorant nor mistaken as to any or all material *facts* which would have prompted or restrained it from the voluntary issuance and payment of the duplicate draft. *The petition failed to allege to the contrary. Camp* v. *Phillips,* 49 *Ga.* 455. Therefore it must be assumed that the plaintiff unconditionally consummated all things necessary with the payee of the first draft to effect fully and completely the settlement *once* of the claim against it by the compromise between it and the payee, save only the obligatory payment of the draft on its presentation, and thereby extinguish any and all claims of the payee or assigns (or its receiver). It must be assumed that its "negotiable" draft was known to be already in the hands of third persons. In this connection it will be observed that only the *validity* of the *assignment* of the first draft was ever contested (in the Carolina court). The telegrams of the lawyers representing the receiver and Mrs. Groover demanded the inference that the draft was not in the manual control of either of them. It does not appear factually from the telegrams or the receivership proceedings that there were any *demands* that the payment of the draft be stopped and that delivery of a duplicate draft be made either to the receiver or Mrs. Groover. The receivership proceedings were silent, and the requests, such as they were, though seeking definitely an answer, left the matter optional with the plaintiff in error. The plaintiff, knowing that it had effected a binding settlement and extinguishment of the claim of the payee (save only

its due payment of the draft), and knowing that no legal right or chose could succeed to the receiver or Mrs. Groover in the claim already settled, and in knowledge of all facts, nevertheless executed its duplicate draft and delivered it to counsel for the receiver. It being shown that all facts were known to the plaintiff, and that the payment was voluntary, it remains to be determined whether the voluntary payment was made in *ignorance of law* or *in mistake of law*. If it was made in ignorance of law, recovery is barred; if in mistake of law, recovery is permitted. *Culbreath* v. *Culbreath,* 7 *Ga.* 64 (50 Am. D. 375) ; *Arnold* v. *Georgia Railroad & Banking Co.,* 50 *Ga.* 304; *Jenkins* v. *German Lutheran Congregation,* 58 *Ga.* 125, 126. *"Ignorance* implies passiveness; *mistake* implies action. *Ignorance* does not pretend to knowledge, but *mistake* assumes to know. *Ignorance* may be the result of laches, which is criminal; *mistake* argues diligence, which is commendable. Mere *ignorance* is no mistake, but a *mistake* always involves ignorance, yet not that alone." *Culbreath* v. *Culbreath,* supra.

If the plaintiff was acting in ignorance of law or in mistake of law, it must be inquired what was the particular *state of facts* to which the one or the other was applying? The plaintiff knew that the receiver or Mrs. Groover had no claim against it, notwithstanding the telegram as to "assets" of the payee having been transferred to Mrs. Groover. It had effectually extinguished the *claim* of the payee by the first draft (conditioned on its payment) ; that draft had been transferred to an innocent purchaser for value; to him the plaintiff was indebted. There had, however, before actual payment of the first draft, been receivership proceedings perfected against the payee of that draft. Those proceedings in no way ad literatum required anything of the plaintiff. It was not a party thereto. Knowing these facts, the plaintiff was a stranger to the proceedings. The law was not obligating it to pay anything to the receiver or Mrs. Groover. While the plaintiff took action, the law was not impelling it. Therefore, under this state of facts, we think the plaintiff acted under ignorance of the law. However, had there been a *contract* or *claim* existent (as in *Dolvin* v. *American Harrow Co.,* 125 *Ga.* 699, 705 (54 S. E. 706, 28 L. R. A. (N. S.) 785), which it was the duty of the receiver to enforce, or had there been requirements made of the plaintiff under or by virtue of the receivership proceedings (*Phillips* v. *Crews,* 65 *Ga.* 274,

277), or the plaintiff had been a party to the proceedings, and had acted under a mistake of what the law was as applicable to this state of facts, or was *requiring* of it, we think that the mistake, though a product of ignorance, would be such a mistake of law as applied in the existence of facts impelling the action, rather than to the negation of their existence, and it would be such a mistake as would come within the rule. Such was not the status in the instant case. The petition sets out that the receiver received the proceeds of the duplicate draft. Taking the allegations of the petition most strongly against the pleader, we think the legal effect of the pleadings is that Mrs. Groover was the *recipient* of the proceeds of the duplicate draft. The telegram specifically indicated that all "assets" had been transferred to Mrs. Groover; and that should the plaintiff issue a duplicate, it might be either to the receiver or Mrs. Groover. Accordingly, it clearly appears that the receiver was only an intermediary or facilitator for conveying to Mrs. Groover the proceeds of the draft, to which the telegram had indicated she was entitled. The receiver was no more than a nominal conveyor of the proceeds, the legal effect being the same as if the duplicate draft had been made payable directly to Mrs. Groover. But whether the payment was in legal effect made to the receiver or Mrs. Groover, it appears to have been made in ignorance of the law, and was not recoverable.

*Judgment adhered to. Broyles, C. J., and MacIntyre, J., concur.*