## 63244. HAWKINS v. TRAVELERS INSURANCE COMPANY.

CARLEY, Judge.

Appellant-Hawkins suffered serious personal injuries on May 9, 1975, in a collision between her automobile and a vehicle being operated by Gerald Remer. Appellee-Travelers Insurance Company (Travelers) is the no-fault carrier for Hawkins under a policy providing both mandatory PIP benefits and an additional $20,000 in optional PIP coverage. Allstate Insurance Company (Allstate) is Remer's liability carrier under a policy providing up to $50,000 coverage.

On July 28, 1975, Allstate was placed on notice that Travelers was Hawkins' no-fault carrier and, accordingly, the insurer entitled to the right of subrogation under former Code Ann. § 56-3405b (d) (Ga. L. 1974, pp. 113, 119). Subsequently, Hawkins was paid $20,456.73 in no-fault benefits by Travelers. With regard to settlement of Hawkins' claims against Remer, however, Allstate was in a quandary. Allstate's agent in charge of the negotiations testified that he would have authorized payment to Hawkins of $50,000, the full limits of Remer's policy, if he had not been put on notice of Travelers' subrogation rights. Allstate's agent further testified: "At that time, . . ., it was just completely up in the air as far as the law on it [Travelers' subrogation rights] was concerned. I didn't — we didn't know whether the injured party was going to get the first money or whether the claimant — the [no-fault] insurance carrier was entitled to the first money, so at that time, we tried to — in cases of this type,

where we were paying our policy limits — we tried to contact the carrier who had a [subrogation] claim against us and either compromise the claim or get them to waive it, if they would." Apparently there were discussions held between Allstate, Travelers and Hawkins concerning the disbursement of the proceeds of Remer's policy. Both Allstate and Travelers informed Hawkins that "it was the law" that Travelers was entitled as the no-fault insurer with subrogation rights to recover from the proceeds of Remer's liability insurance the amount of the PIP benefits it had paid to Hawkins. As the consequence of these discussions, Hawkins, through her attorney, "agreed to settle the Hawkins' claims against Gerald Remer and Allstate for $50,000 subject to Travelers' PIP claim." Thereafter, Allstate and Travelers reached an agreement whereby the former would tender and the latter would accept in settlement of its subrogation claim an amount equal to one-half of the $20,456.73 PIP benefits it had paid out to Hawkins. Accordingly, under what Hawkins terms a "mistake of law with full knowledge of all the facts," she and her husband received $39,771.64 from the $50,000 proceeds of the Remer policy and Travelers received the balance of $10,228.36. Hawkins, in consideration of this payment, signed a general release of Allstate and its insured, Remer.

The instant action was instituted by Hawkins against Travelers. In Count I, Hawkins sought to recover the $10,228.36 that Travelers had been paid by Allstate from the proceeds of Remer's liability policy. In Count II, Hawkins sought to recover benefits under the medical payments provision of the policy and, in addition, sought penalties and attorney fees under Code Ann. § 56-1206. After extensive discovery, Hawkins moved for partial summary judgment on the issue of liability and Travelers moved for summary judgment as to the entire action. Hawkins also moved under Code Ann. § 81A-156 (g) for an order awarding her reasonable expenses and adjudging Travelers in contempt for filing an allegedly "false" affidavit in the action. After a hearing, the trial court denied Hawkins' motions and entered summary judgment in favor of Travelers as to all claims. It is from that order that Hawkins appeals.

1. Hawkins is correct in her assertion that, under the facts of this case, *Blaylock v. Georgia Mut. Ins. Co.,* 239 Ga. 462 (238 SE2d 105) (1977) is controlling on the question of Travelers' right to subrogation and the priority of that right under the applicable former statute. In that decision, the Supreme Court held that "having the right of subrogation does not necessarily establish priorities where the assets of the tortfeasor are inadequate to pay his liabilities . . . [A]n injured person insured pursuant to the [no-fault] Act is to receive full compensation for his injuries before his insurer is

compensated on the basis of subrogation rights . . ." *Blaylock,* 239 Ga. at 465. It is essentially Hawkins' position that, under *Blaylock* and subsequent cases, her entitlement as the "injured person" to receive "full compensation" for her injuries had priority over Travelers' subrogation rights as her no-fault carrier, and if her right and priority had been recognized she would have received the full $50,000 of the insurance proceeds in settlement of her tort claim to the extinguishment of Travelers' subrogation rights in connection with Remer's liability policy. See generally *Georgia Farm Bureau Mut. Ins. Co. v. Southeastern Fid. Ins. Co.,* 144 Ga. App. 811 (242 SE2d 743) (1978). Thus, Hawkins asserts an invasion of her right and priority to full satisfaction of her tort claim through Travelers' assertion of its subordinate right and priority to satisfaction of its subrogation claim. On the basis of this "invasion" she seeks a return of the $10,228.36 representing "her" tort claim which was paid out under a "mistake of law" to Travelers in settlement of its no-fault subrogation claim. See *Culbreath v. Culbreath,* 7 Ga. 64 (1849).

We note at the outset that the mere fact that Hawkins' right to "full compensation" had priority over Travelers' right to subrogation is not dispositive. To paraphrase *Blaylock,* priority of the right of the injured party to "full compensation" does not necessarily establish the right of the no-fault carrier to subrogation, even where the assets of the tortfeasor are inadequte to pay his liabilities. This is true because, as we interpret *Blaylock,* "[t]o the extent that [the injured party has in fact] been [fully] compensated for [his] injuries, . . . the balance [of the policy proceeds], if any, [is] due the [no-fault] insurer [having subrogation rights.]" *Blaylock,* 239 Ga. at 465-466, supra. Thus, even though the liability policy limits may otherwise be "inadequate" to compensate both the injured party and his no-fault carrier, to the extent that the former receives "full compensation" from the policy proceeds, the latter has a right to the balance thereof to the extent of its subrogation claim. Thus, the decisive issue is whether Hawkins received "full compensation" for her injuries.

The application of the aforesaid principles to the facts of the instant case demonstrates the following: Travelers' initial subrogation claim was properly asserted against Allstate, Remer's insurer. Compare *Aetna Cas. &c. Co. v. Sosebee,* 150 Ga. App. 354 (258 SE2d 37) (1979). Because Travelers had asserted this subrogation claim, Remer's liability policy which contained a $50,000 limit would have been inadequate to compensate both Hawkins and Travelers. While, in view of the evidence that Allstate apparently *would* willingly have exhausted the full $50,000 in satisfaction of Hawkins' tort claim and for that reason the priority of Traveler's right to subrogation was "doubtful" under *Blaylock,* it is undisputed

that Allstate did *not* pay Hawkins the full policy limits because it was "up in the air" on the question of which claim, Hawkins' or Travelers', had priority. Compare *Georgia Farm Bureau Mut. Ins. Co.,* 144 Ga. App. 811, supra. Under this set of facts it appears that Hawkins, when confronted with Travelers' subrogation claim and Allstate's consequent confusion and uncertainty, agreed to settle *her* tort claim "for $50,000 subject to Travelers' PIP claim."

Pursuant to Hawkins' agreement, Allstate subsequently offered and Hawkins and her husband then accepted a total of $39,777.64 in settlement of their respective tort claims and executed a general release in favor of Remer and Allstate. A release "operates to release a tortfeasor on the theory that there should be a just satisfaction and there has been a complete accord and satisfaction. [Cits.]" *Cash v. Street & Trail, Inc.,* 136 Ga. App. 462, 464-465 (221 SE2d 640) (1975). " 'When a release is taken, the consideration paid is presumptively full compensation.' " *Gilmore v. Fulton-DeKalb Hosp. Auth.,* 132 Ga. App. 879, 880-881 (209 SE2d 676) (1974). " 'Where, without the practice of any fraud upon her, a plaintiff accepts, in full satisfaction of her claim, a lesser amount than what she claims is due her, there is an accord and satisfaction, and she is not entitled to a recovery. [Cits.]' [Cit.]" *Mullinax v. Shaw,* 143 Ga. App. 657, 659 (239 SE2d 547) (1977). Therefore, when Hawkins accepted the payment from Allstate on behalf of Remer and executed a general release in their favor, she was "fully compensated" by them for her injuries and the balance of Remer's assets, "if any," was thereby subject to Travelers' formerly subordinate subrogation rights. *Blaylock,* 239 Ga. 463, 465-466, supra. Accordingly, Travelers' receipt of the balance of Remer's assets in satisfaction of its subrogation claim resulted from Hawkins' voluntary action in settling her own tort claim with Allstate and Hawkins is not entitled to recover that balance from Travelers. See Code Ann. § 20-1007; *Stein Steel &c. Co. v. K. & L. Enterprises,* 97 Ga. App. 71 (102 SE2d 99) (1958). Under the evidence, Hawkins voluntarily, though perhaps mistakenly, relinquished her right and priority to the full amount of Remer's "inadequate" assets and she cannot recover back such money as she might otherwise have received had her actions not tacitly authorized its payment to Travelers. See *McCarty v. Mobley,* 14 Ga. App. 225 (80 SE 523) (1913); *Chapman v. Ellis,* 58 Ga. App. 614 (199 SE 650) (1938). It is clear that had Hawkins not voluntarily relinquished her right and priority to the full limits of Remer's liability policy and had Allstate, in fact, paid Hawkins the full $50,000, Travelers' subrogation claim under former Code Ann. § 56-3405b(d) would have been extinguished. *Blaylock,* supra.

A contrary result is not required by *Culbreath v. Culbreath,* 7

Ga. 64, supra. In that case it was held that "[m]oney paid by mistake of the law, may be recovered back in an action for money had and received, where there is a full knowledge of all the facts; *provided,* that the mistake is clearly proven, and the defendant cannot, in good conscience, retain it." *Culbreath,* 7 Ga. 64 (1), supra. In view of the fact that the *Blaylock* decision, upon which Hawkins predicates her right and priority to "full compensation," was decided some three weeks *before* she executed the settlement agreement with Remer and Allstate, it appears that her actions were taken in ignorance of, not in mistake of, what she now claims were her then-existing legal rights. See *American Surety Co. v. Groover,* 64 Ga. App. 865 (14 SE2d 149) (1941); *McCarty v. Mobley,* 14 Ga. App. 225, supra. See also *Arnold & DuBose v. Ga. Railroad &c. Co.,* 50 Ga. 304, 309 (1873). " '[W]hen money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay, when in truth he was not. He shall not be permitted to allege his ignorance of the law, and it shall be considered a voluntary payment.' " *White v. Rowland,* 67 Ga. 546, 557 (1881).

Moreover, it does not appear that Travelers in good conscience cannot retain the money it received from Allstate. Unlike the defendants in *Culbreath,* supra, Travelers had a right to subrogation assertable against Allstate, a right which under *Blaylock* was merely subordinate to Hawkins' right to full compensation from the insurance proceeds. Allstate, not Hawkins, actually paid the money to Travelers and did so only after Hawkins' voluntary actions freed the balance of the policy limits for the satisfaction of the no-fault subrogation claim. It is true that Hawkins' actions were apparently prompted or at least preceded by the statements of Allstate and Travelers that "it was the law" that the latter was entitled to be subrogated from the proceeds of Remer's policy. However, these statements were, insofar as they went, true, the only qualification being that Hawkins' right to "full compensation" had priority over Travelers' subrogation rights. There is no indication and Hawkins does not contend that Travelers, in asserting its right to subrogation against Allstate or in its discussions with Hawkins, did not act in good faith or in good conscience. See *Stern v. Howell,* 33 Ga. App. 693 (2a) (127 SE 775) (1925). And, as noted above, Hawkins' final and unequivocal relinquishment of her right and priority to the funds payable under the policy which paved the way for the satisfaction of Travelers' subrogation claim from the balance thereof appears to have resulted merely from an ignorance of the fact that her rights therein, if asserted, *would* be superior to Travelers' doubtful priority thereto. See *McCarty v. Mobley,* 14 Ga. App. 225, supra; *Crawford v.*

*Gulf States Mtg. Co.,* 153 Ga. App. 393 (265 SE2d 327) (1980). Accordingly, we find no error for any reason urged on appeal in the grant of Travelers' motion for summary judgment and in the denial of Hawkins' motion as to Count I.

2. As to Count II, Travelers asserted and the trial court ruled that Hawkins' claim for medical benefits was barred by a 12-month limitation in the policy on bringing suit for such benefits. The operative language of the policy relied upon by Travelers as establishing the 12-month limitation is as follows: "COVERAGE C — MEDICAL PAYMENTS. The company will pay all reasonable expenses incurred within one year from the date of accident . . ." It is readily apparent that this language of the policy defines the *coverage* extended by Travelers and does not establish a 12-month period within which the claim for medical benefits must be filed. Obviously the language, appearing as it does in the coverage portion of the policy, does not mean that Travelers will pay medical benefits if and only if a claim for such benefits is made within one year of the accident. The only reasonable construction of the literal language of the policy is that Travelers agreed to extend coverage and to pay for all reasonable medical expenses which the insured had incurred, not had made a claim for, during the year following an accident. See generally *Cincinnati Ins. Co. v. Gwinnett Furniture Mart,* 138 Ga. App. 444 (226 SE2d 283) (1976). Compare *Maxwell Bros. v. Liverpool &c. Ins. Co.,* 12 Ga. App. 127 (1) (76 SE 1036) (1912); *Gibraltar Fire &c. Ins. Co. v. Lanier,* 64 Ga. App. 269 (13 SE2d 27) (1941). Travelers has cited no provision of the policy and our independent review has found none which would take Hawkins' suit for medical benefits outside the six-year statute of limitation otherwise applicable to an action on a contract of insurance. See *Stanley v. Whitfield Life Ins. Co.,* 89 Ga. App. 160 (2) (78 SE2d 821) (1953). Compare *Pennsylvania Millers Mut. Ins. Co. v. Thomas Milling Co.,* 137 Ga. App. 430 (224 SE2d 55) (1976). In the instant case, it is undisputed that Hawkins' suit to recover all reasonable medical expenses which were incurred within one year of the collision was brought within the applicable six-year statute of limitation. Accordingly, the trial court erred in granting Travelers summary judgment on Count II under this theory.

However, it was not error to deny Hawkins' motion for summary judgment as to Travelers' liability on Count II. It appears that under the policy one of the conditions to payment of medical benefits was the requirement that "[a]s soon as practicable the injured person, . . . shall give to [Travelers] written proof of claim . . ." In her complaint Hawkins alleged that she had "submitted reasonable proof of her claim and made demand for payment of necessary medical expenses to [Travelers] on June 9 and 19, 1980," some five years after the

collision and some four years after the coverage for medical expenses had apparently expired. Travelers in its answer denied the allegations of the complaint that Hawkins had submitted "reasonable proof" of the medical benefits claim. We are cited to no evidence on this issue of "reasonable proof" and in our review of the record we have found none. Accordingly, it was not error to deny Hawkins' motion for partial summary judgment as to Count II. See generally *Norfolk & Dedham Mut. Fire Ins. Co. v. Cumbaa,* 128 Ga. App. 196 (196 SE2d 167) (1973). Compare *Erber v. Ins. Co. of N. A.,* 134 Ga. App. 632 (215 SE2d 528) (1975).

3. While we find no Georgia authority construing Code Ann. § 81A-156 (g), we hold that it was not error for any reason urged on appeal to deny Hawkins' motion to award reasonable expenses and to adjudge Travelers in contempt. Cf. *Moore v. Moore,* 235 Ga. 512 (220 SE2d 133) (1975). See also Southern Concrete Co. v. U. S. Steel Corp., 394 FSupp. 362 (1) (Ga. 1975) (construing the analogous Fed. R. C. P. 56 (g)).

4. It was not error to deny Hawkins' motion and to grant Travelers' motion for summary judgment as to Count I. While it was error to grant Travelers' motion for summary judgment as to Count II, it was not error to deny Hawkins' motion as to that count. Finally, it was not error to deny Hawkins' Code Ann. § 81A-156 (g) motion.

*Judgment affirmed in part and reversed in part. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED APRIL 16, 1982 —
REHEARING DENIED MAY 3, 1982 —

*Sammy J. Hawkins,* for appellant.
*Alan F. Herman, Wayne Grant,* for appellee.
*Don C. Keenan, Charles R. Ashman,* amicus curiae.