A00A1179. TELESCRIPPS CABLE COMPANY v. WELSH.
(542 SE2d 640)

POPE, Presiding Judge.

Mark D. Welsh filed this class action against Telescripps Cable Company asserting that the late charge assessed by the company on overdue monthly payments was an unenforceable penalty under Georgia law.

Telescripps provided cable television service to portions of the Atlanta metropolitan area. Each subscriber to the service signed a Service Agreement, which stated that an unspecified late fee would be charged to a customer's account if payment was not received by

the due date. At the time they signed up for the service, Telescripps customers were provided with a rate card showing the current late fee. The fee was $2 in February 1991; it increased to $5 in March 1991 and then to $6 in January 1994.

Under the Service Agreement, Telescripps billed in advance for its services. Each monthly statement showed the balance owing and a payment due date, which was 27 days after the statement was mailed. If a subscriber did not pay by the stated due date, Telescripps notified the subscriber on the next monthly billing statement. That statement was mailed approximately 30 days after the previous month's statement was mailed. If the subscriber did not make a payment by the next due date, an additional 27 days later, the late fee was added to the account and showed up on the next monthly statement. Therefore, subscribers had 57 days from the mailing of the first statement in which to make payment before a late fee was assessed.

If payment was not received by the sixty-second day of the billing cycle, Telescripps performed an electronic, or "soft," disconnection. If the subscriber had not paid by the sixty-fifth day, Telescripps initiated collection efforts such as collecting payments in the field or disconnecting the service at the subscriber's residence, a "hard" disconnection. The Service Agreement provided for a $20 collection fee "if a technician collects the balance when he comes to disconnect the service," (i.e., a field collection). And if a hard disconnection occurred, the subscriber was required to pay a reconnection fee to restore service. These fees were in addition to the late fee. If the account still was not paid, Telescripps continued its collection efforts, including telephone calls, mailings and referral to a collection agency. After 90 days, the account was closed for nonpayment.

Approximately ten percent of Telescripps' subscribers per month failed to pay on time. The costs incurred by Telescripps in collecting on delinquent accounts varied according to how often and how long a particular subscriber was delinquent, what collection efforts were used and whether the charges were ever paid. The costs included payroll costs, telephone costs, equipment costs, mailing costs, costs of funds and collection fees.

In 1996, Welsh filed suit on behalf of himself and all others similarly situated, asserting claims for breach of contract and money had and received. After the class was certified, Welsh moved to redefine the class, and the trial court granted the order. As redefined, the class consists of: (a) current Georgia residents, (b) who were, for the six-year period prior to the effective date of the class action, subscribers to Telescripps cable service, under any trade name, and (c) who were assessed and paid a "late fee" prior to either a "soft" or a "hard" disconnection of cable services.

Welsh subsequently moved for partial summary judgment as to liability, and Telescripps filed a motion to dismiss and a cross-motion for summary judgment. The trial court granted Welsh's motion for partial summary judgment and denied Telescripps' motions. Telescripps appeals from that order, as well as from the trial court's class certification orders.

1. Telescripps asserts that the trial court erred in denying its motion to dismiss based upon the voluntary payment doctrine. This doctrine is set forth in OCGA § 13-1-13, which reads:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply. See *Rod's Auto Finance v. Finance Co.*, 211 Ga. App. 63 (1) (438 SE2d 175) (1993). But as movant, Telescripps bears the burden of establishing that Welsh would not be entitled to relief under any state of facts that could be proven to support the claims. *Butler v. Dawson County*, 238 Ga. App. 808, 810 (518 SE2d 430) (1999). "Even taking this standard into account, however, we agree with [Telescripps] that dismissal is warranted." (Citation omitted.) Id.

Under the Service Agreement, a late fee was incurred if payment was not made by the due date. Each of the members of the plaintiff class was aware of this policy, yet failed to make timely payment. They then chose to voluntarily pay the late fee after it was assessed. The plaintiffs raise no claim of misplaced confidence, artifice, deception or fraudulent practice. Nor do they assert that the payment was made under urgent necessity or to prevent the improper seizure of or to secure the release of person or property. OCGA § 13-1-13. Instead, they assert that they did not know the late fee was not a reasonable preestimate of Telescripps' probable loss incurred as a result of a subscriber's late payment.

This assertion ties in with plaintiffs' claim that the late fee was an unenforceable penalty. In order for the late fee to be considered an enforceable liquidated damage provision, rather than a penalty, it must comply with three requirements, one of which is that it must be a reasonable preestimate of probable loss:

Such provisions are enforceable if (1) the injury caused by a breach of contract is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than a penalty; and (3) the stipulated sum is a reasonable estimate of the probable loss.

*Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 686 (1) (534 SE2d 145) (2000). See also *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

Assuming, without deciding, that the late fee was not a reasonable preestimate, the plaintiffs are asserting that they did not know that the late fee was unenforceable under the law. In other words, the plaintiffs are simply stating that they made their payment under ignorance of the law. And when payment is made through mere ignorance of the law, it is not recoverable:

When money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay, when in truth he was not. He shall not be permitted to allege his ignorance of the law, and it shall be considered a voluntary payment. *White v. Rowland*, 67 Ga. 546, 557 (1881).

(Punctuation omitted.) *Hawkins v. Travelers Ins. Co.*, 162 Ga. App. 231, 235 (1) (290 SE2d 348) (1982). See also *Cotton v. Med-Cor Health Information Solutions*, 221 Ga. App. 609, 611 (2) (472 SE2d 92) (1996) (voluntary payment doctrine bars claim made through an unexcused ignorance of the law); *Twin Oaks Assoc. v. DeKalb Venture*, 190 Ga. App. 854, 856 (2) (380 SE2d 469) (1989) (recovery barred where payment of prepayment penalty was not legally required).

This holding is in accord with a recent Florida appellate decision, which held that the claims of a similar plaintiff class were barred in the light of the voluntary nature of the plaintiffs' payments:

Even if the [subscribers] were unaware of the actual costs which the [cable company] incurred in connection with the late payment, the [subscribers] were informed of the payment deadline and the possibility that the late charges could be imposed upon late payment. They nevertheless decided to make late payment, and to pay the late charges assessed thereon. Having so decided to make voluntary payment of the late charges, the appellants are now precluded from

maintaining an action for recovery of those voluntary payments.

*Hassen v. MediaOne of Greater Fla.*, 751 S2d 1289, 1290 (Fla. App. 2000). See also *Hill v. Galaxy Telecom*, Case No. 1:98CV51-D-D, 2000 U. S. Dist. LEXIS 2404 (N.D. Miss. 2000) (voluntary payment doctrine entitled cable company to judgment as a matter of law on claim that late fee was an unlawful penalty); *McWethy v. Telecommunications*, 988 P2d 356 (Okla. Civ. App. 1999) (motion to dismiss on claim that late fee was an illegal penalty was properly granted under voluntary payment doctrine).

The plaintiffs assert, however, that the application of the voluntary payment doctrine must be considered in conjunction with the equities of OCGA § 23-2-32 under their claim for money had and received.[1] In particular, they point to our Supreme Court's holding that:

> In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment — subject to a weighing of the equities between the parties by the trier of fact.

*Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406 (349 SE2d 368) (1986). But this holding presupposes that a plaintiff made payment under a mistake of fact, as was the case in *Folsom*, where plaintiff overpaid due to a computer mistake. Id. at 400. See also *Cochran v. Ogletree*, 244 Ga. App. 537, 540 (536 SE2d 194) (2000) (OCGA § 13-1-1 does not bar recovery under a balancing of the equities where parties laboring under a mutual mistake of fact).

Here we have found that there was no mistake of fact, merely ignorance of the law. Under these circumstances, it is not necessary to apply the *Folsom* balancing test. See, e.g., *Yeazel v. Burger King Corp.*, 241 Ga. App. 90, 99 (3), n. 20 (526 SE2d 112) (1999) (*Folsom* inapplicable where payments made voluntarily with knowledge of all the facts and not due simply to plaintiff's negligence in failing to ascertain the facts); *Chemin v. State Farm &c. Ins. Co.*, 226 Ga. App. 702, 704 (487 SE2d 638) (1997) (voluntary payment doctrine bars recovery where plaintiffs failed to show mistake of fact or law); *Cot-*

---

[1] For purposes of this argument, we assume, without deciding, that plaintiffs were entitled to assert a claim for money had and received despite the parties' express written agreement. See, e.g., *Baghdady v. Central Life Ins. Co.*, 224 Ga. App. 170, 171 (2) (480 SE2d 221) (1996) (theory of money had and received applies only when there is no legal contract).

*ton*, 221 Ga. App. at 612 (where no evidence of mistake of fact, voluntary payment doctrine bars recovery even if the charges imposed were in violation of a statute).

Accordingly, we hold that the voluntary payment doctrine barred plaintiffs' claims for recovery of the late fees and Telescripps was entitled to the dismissal of the plaintiffs' complaint.

2. In light of our holding in Division 1 above, we do not find it necessary to reach the remaining enumerations of error.

*Judgment reversed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 22, 2000 —
RECONSIDERATION DENIED DECEMBER 13, 2000 —

*Gerry, Friend & Sapronov, William D. Friend, John W. Sandifer, Mari Myer*, for appellant.

*Page & Bacek, Brian N. Smiley, James M. Bishop, Butler, Wooten, Overby, Fryhofer, Daughtery & Sullivan, Joel O. Wooten, Jr., C. Frederick Overby, Jeffrey G. Casurella*, for appellee.

*Mark M. Middleton*, amicus curiae.

