76074. TRANSPORT INSURANCE COMPANY v. MARYLAND
CASUALTY COMPANY.
(370 SE2d 188)

BANKE, Presiding Judge.

This is a subrogation action brought by Maryland Casualty Company against Transport Insurance Company to obtain reimbursement for certain "no-fault" benefits paid by Maryland Casualty to one of its policyholders. Transport Insurance Company filed this appeal from an order granting summary judgment to Maryland Casualty and denying its own motion for summary judgment.

The parties have stipulated to the following facts: Mr. and Mrs. Martin were issued a policy of automobile insurance by Maryland Casualty in 1975, providing basic personal injury protection (PIP) coverage in the amount of $5,000. This policy was renewed annually and was in force in January of 1977, when Mrs. Martin was injured in a collision involving the insured automobile and a tractor-trailer truck weighing in excess of 6,500 pounds. This truck was owned and operated by Old Dominion Freight Lines and insured by Transport Insurance Company. As a result of her injuries, Mrs. Martin incurred medical expenses in excess of $45,000; however, Maryland Casualty initially paid her only the minimum $5,000 in no-fault benefits provided for under the terms of its policy. In subsequent litigation against Old Dominion, its driver, and Transport Insurance Company, Mrs. Martin was awarded damages in the amount of $200,000; and Mr. Martin, in a separate action, was awarded damages in the amount of $300,000.

Pursuant to this court's decision in *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980), the Martins later brought suit against Maryland Casualty and its agent seeking to recover additional PIP benefits, penalties, and attorney fees. Thereafter, Maryland Casualty evaluated its insurance application form to determine if it was in compliance with the *Jones* standard. After the Supreme Court rendered its decision in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), Maryland Casualty determined

that its application form did not comport with the applicable requirements of OCGA § 33-34-5 (b) and consequently paid the Martins an additional $40,000 in settlement of their optional coverage claim. Thereafter, Maryland Casualty brought the present subrogation action against Transport Insurance Company, pursuant to the then existing version of OCGA § 33-34-3 (d) (1). As previously indicated, the present appeal arises from the trial court's grant of summary judgment to Maryland Casualty in that action. *Held*:

1. In this most unusual variation on the *Jones/Flewellen* theme, Maryland Casualty contends that its own application was defective, while the opposing party, Transport Insurance Company, contends that the application was in substantial compliance with the applicable statutory requirements, with the result that Maryland Casualty acted as a mere volunteer in paying the additional $40,000 to Mrs. Martin and therefore has no right to be reimbursed for this expenditure. See generally *Federated Mut. Ins. Co. v. Northland Ins. Co.*, 254 Ga. 402 (329 SE2d 493) (1985). The statute applicable to the application was Ga. L. 1974, p. 113, § 4 (former Code Ann. § 56-3404b (b)), which provided as follows: "Each application for a policy of motor vehicle liability insurance sold in this state must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) [of this Code section], and no such policy shall be issued in this state unless these spaces are completed and signed by the prospective insured."

"In order for a document to be in substantial compliance with [the above statutory provision], the form on its face should show the prospective insured, as a reasonable man or woman, the offered coverages and the action needed to accept or reject with such clarity so as not to require speculation as to whether there was a knowing election. In other words, does the form show that the applicant, as an ordinary reasonable man or woman, understood what was being offered and what choices he or she was making? If the answer to this question is 'yes,' and there is no evidence produced that the insured is other than the ordinary reasonable person, this should end the matter. If the answer is 'no,' it can be said as a matter of law that the form is defective by failing to substantially comply with the legislature's mandate." *Associated Indem. Corp. v. Sermons*, 175 Ga. App. 513, 516 (333 SE2d 902) (1985).

An examination of Maryland Casualty's application form reveals that it was in substantial compliance with the former Code section. The application consisted of four pages. The first two pages comprised the basic application form. This portion was signed by Mr. Martin at the end of the second page. The second two pages set forth the various available optional coverages, under the heading: "GEORGIA NO-FAULT AUTOMOBILE ADDITIONAL COVERAGES OF-

FER." This portion of the application was divided into four separate sections. The first pertained to "Additional Personal Injury Protection" and specified as follows: "You have been furnished with the Basic PIP endorsement which provides coverage required by the No-Fault Law. Total aggregate limit provided is for $5,000 per person. . . . The following options are available to you which provide for higher protection benefits:

| Option | Total Aggregate Limit | Approximate Annual Cost Per Year |
|--------|----------------------|----------------------------------|
| ☐ 1. | $10,000 | $ 5 |
| ☐ 2. | 25,000 | 9 |
| ☐ 3. | 50,000 | 14 |

I ____ do ____ do not wish to purchase this optional PIP coverage. (If you do wish to have additional coverage, check option desired.)"

The remaining three sections of the optional coverages form pertained, respectively to "Comprehensive Coverage," "Collision Coverage," and "Loss of Use Coverage." In each section, including the optional PIP coverage section, a handwritten "X" had been placed in the space indicating that the optional coverage in question was not desired. Mr. Martin's signature also appeared at the end of the second page of this form.

Maryland Casualty asserts that the optional coverages application was defective with respect to PIP coverage because the page containing the optional PIP coverage election was not separately signed. We disagree. While the statute requires that the insured's decision to reject optional PIP coverages be evidenced by a separate signature, it appears to be well settled that this signature need not appear immediately adjacent to the election to accept or reject optional PIP coverage but may appear at the end of a separate application form dealing with the acceptance or rejection of optional coverages generally. See *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215) (1984); *Nalley v. Select Ins. Co.*, 165 Ga. App. 345 (299 SE2d 172) (1983), cert. vacated 251 Ga. 722 (313 SE2d 465) (1983); *Reed v. Ga. Farm &c. Ins. Co.*, 171 Ga. App. 126 (318 SE2d 746) (1984).

We recognize that none of the foregoing authorities involved a two-page optional coverages application form such as the one at issue in this case, with the signature line appearing on a page separate from that on which the optional PIP coverages were offered. However, we nevertheless hold that Maryland Casualty's form met the statutory requirements, because the "separate spaces for the insured to indicate his acceptance or rejection of each of the optional [PIP] coverages"

were required to be separately signed by the prospective insured in the sense that a separate signature was required in addition to the signature appearing on the main application form. Certainly, the optional coverages application form utilized by Maryland Casualty disclosed the optional PIP coverages available to the prospective insured, and the action needed to accept or reject them, "with such clarity so as not to require speculation as to whether there was a knowing election." *Assoc. Indem. Corp. v. Sermons*, supra, 175 Ga. App. at 516. Under the circumstances, we can perceive no reasonable possibility that the separate signature line provided at the end of this form would not be seen as relating directly to the the election of optional PIP coverages as well as to the election of the other optional coverages.

2. While it is undisputed that Mr. Martin signed both the main application form and the optional coverages form, Maryland Casualty asserts that a question of fact remains as to whether he in fact placed the handwritten "X's" in the spaces purporting to indicate his lack of desire to purchase any of the optional coverages. However, it has been held that the signature of the insured "is conclusive proof in law that the insured knows of the options and rejects them. [Cits.]" *Bob Lairsey Ins. Agency v. Allen*, 180 Ga. App. 11, 14 (348 SE2d 658) (1986). Once a determination is made that the application is in compliance with the statutory scheme, "[o]ral declarations of the parties provide no basis for resolving conflicts as to whether an applicant was made aware of his statutory right to optional coverages and whether he knowingly elected not to exercise that right. [Cits.]" *Hardy v. Nationwide Ins. Co.*, 182 Ga. App. 311, 312 (356 SE2d 38) (1987).

3. Having determined that the contract of insurance between the Martins and Maryland Casualty provided only for minimum PIP benefits in the amount of $5,000, we must conclude that Maryland Casualty is not entitled to hold Transport Insurance Company accountable for its payment of additional PIP benefits to the Martins. " 'Subrogation "is never applied for the benefit of a mere volunteer who pays the debt of another without any assignment or agreement for subrogation, and who is under no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own." ' " *Federated Mut. Ins. Co. v. Northland Ins. Co.*, supra, 254 Ga. at 403, citing *Federal Land Bank of Columbia v. Barron*, 173 Ga. 242 (4) (160 SE 228) (1931). See *Carter v. Banks*, 254 Ga. 550 (2) (330 SE2d 866) (1985). Therefore, we hold that, to the extent of the $40,000 optional coverage claim but not the $5,000 basic coverage claim, the trial court erred both in granting Maryland Casualty's motion for summary judgment and in denying the motion for summary judgment filed by Transport Insurance Company.

4. In view of the foregoing, it is unnecessary to address the ap-

pellant's remaining enumerations of error.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., and Beasley, J., concur.*

DECIDED MAY 16, 1988 —
REHEARING DENIED JUNE 2, 1988 —

*Michael L. McGlamry*, for appellant.
*Robert M. Darroch, Elizabeth A. Obenshain*, for appellee.