A08A0201. ENERGY & PROCESS CORPORATION v. JIM DALLY AND ASSOCIATES, INC.

(662 SE2d 835)

PHIPPS, Judge.

Energy & Process Corporation ("Energy") brought this suit against Jim Dally and Associates, Inc., d/b/a Standard Resistance Welder Company ("Standard"), seeking $7,222.50 in damages for breach of contract and an award of attorney fees under OCGA § 13-6-11. At trial, Standard moved for a directed verdict on the contract claim based on the voluntary payment doctrine and on the attorney fee claim based on an absence of evidence to authorize an award of fees. The trial court granted the motion and entered final judgment in Standard's favor on both claims. Energy appeals. For reasons that follow, we reverse.

Evidence introduced at trial showed that Energy, a seller of electrical components to the utility industry, asked Standard to supply it with welding electrodes that Energy was going to sell the Westinghouse Savannah River Company for use by the Department of Energy ("DOE") in a nuclear power project.

On August 15, 2003, Energy sent Standard an order to purchase 18 of the welding electrodes. Under the terms of the purchase order, Standard was to manufacture the electrodes in accordance with certain DOE specifications. At the outset, Standard was to supply "starting materials" (metal discs) to Energy for testing and inspection. Energy was then required to return the discs to Standard to begin the manufacturing process. The terms of payment were "NET 30 days," meaning that payment by Energy was not due until 30 days after Standard had shipped the finished products.

Standard obtained the metal discs and sent them to Energy for testing on December 15, 2003. Energy indicated to Standard that

testing would be completed in two to four weeks. The materials had not been returned, however, as of March 3, 2004, when Standard submitted to Energy an invoice for payment of "half price of the . . . purchase order[,]" along with a letter reminding Energy that the parts had not been returned. In turn, Energy sent Standard a check dated June 25, 2004, in payment of the amount requested. Energy's president testified that he authorized this interim payment even though it was not required under the purchase order, because "[w]e were under the hammer of our customer . . . to fulfill this order" and had concluded, based on statements made by Standard representatives, that "there was going to be no forward movement without it." As further described by Energy's president, "[w]e were operating under some threat of performance."

Nonetheless, in August 2004 Standard advised Energy that it was canceling the order because Energy still had not returned the metal discs. When Energy, however, asked Standard to reconsider because the DOE would not allow its contract with Energy to be cancelled, Standard agreed. Energy returned the discs to Standard in early 2005. In June 2005, Standard sent two completed parts to Energy. It is undisputed that these parts failed to comply with the specifications, that they were returned to Standard, and that Standard agreed to correct the defects.

Later in June, Standard shipped seven completed parts to Energy COD. Energy refused to accept delivery because, contrary to the terms of the purchase order, accepting delivery would have required that it pay for the goods before inspection, and the two parts that had been shipped earlier were noncompliant. Energy's president testified that after rejecting the shipment, Energy attempted without success to make alternative arrangements with Standard to inspect the parts before paying for them, as it had a contractual right to do. Because the inspection never took place, Standard inventoried the parts, and Energy never obtained them. Westinghouse subsequently agreed to terminate its contract with Energy without penalty based on Energy's inability to provide parts. In September 2005, Energy through counsel sent Standard a letter demanding refund of the partial payment. Because no refund was made, Energy filed this suit.

1. Energy contends that the trial court erred in granting Standard's motion for directed verdict on its contract claim under the voluntary payment doctrine. Finding *Broome v. Cavanaugh*[1] controlling, and cases such as *Liberty Nat. Life Ins. Co. v. Radio-*

[1] 102 Ga. App. 563 (116 SE2d 881) (1960).

*therapy of Ga.*,[2] *Lowe v. Presley*,[3] *Commerce Finance Co. v. Perry*,[4] *New York Life Ins. Co. v. Williamson*,[5] and *Arnold & DuBose v. Ga. R. and Banking Co.*[6] distinguishable, we agree.

The voluntary payment doctrine is codified in OCGA § 13-1-13, which provides:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

Thus, in *Arnold & DuBose*,[7] a shipper of cotton sought to recover freight charges that it had paid the carrier. The shipper claimed that the charges were unlawfully excessive. The Court found the excess payments nonrecoverable, holding

> that where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. He shall not be permitted to allege his ignorance of the law; and it shall be considered a voluntary payment.[8]

Nevertheless, under the express terms of OCGA § 13-1-13, the voluntary payment doctrine "has no application where the payment is induced by misplaced confidence, artifice, deception, or fraudulent practice on the part of the person to whom the money is paid."[9] Thus, the court in *Lowe*[10] found the voluntary payment doctrine no bar to the plaintiff's recovery of money he had paid to a person who had misrepresented himself as an attorney authorized to practice law

---

[2] 252 Ga. App. 543 (557 SE2d 59) (2001).

[3] 86 Ga. App. 328 (71 SE2d 730) (1952).

[4] 67 Ga. App. 491 (21 SE2d 123) (1942).

[5] 53 Ga. App. 28 (184 SE 755) (1936).

[6] 50 Ga. 304 (1873).

[7] Supra.

[8] Id. at 310 (citation and punctuation omitted).

[9] *Lowe v. Presley*, supra at 332 (1), citing predecessor to OCGA § 13-1-13.

[10] Id. at 332-333.

and who had rendered legal services of no material benefit to the plaintiff. In contrast, in *Liberty Nat.*,[11] an insurance company was not allowed to recover payments it had made to health care providers in excess of Medicare limitations because the Medicare rules were matters of public record, ignorance of the law is no excuse, and the insurer offered no evidence of reasonable reliance to support its claim of fraud. Similarly, in *New York Life*,[12] an insured who had paid insurance premiums even though he was entitled to a waiver of the premiums under his policies was not allowed to recover payment of the premiums, because he did "not allege or prove that there was any urgent necessity for their payment, or that they were paid under a mistake of facts, or that he was induced to pay them by any fraud or artifice practiced upon him."[13]

Moreover, under the voluntary payment doctrine,

> [i]t seems to be clearly settled that a payment is not made under compulsion or duress, but will be treated as voluntary, unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person. . . . Furthermore, the doctrine appears to be that if the law affords to the person from whom the payment is exacted an immediate and adequate remedy to resist payment, he can not be said to have acted under compulsion, if, neglecting to avail himself of such remedy, he elects to make the payment demanded of him.[14]

But the court in *Broome*[15] held the voluntary payment doctrine inapplicable where the plaintiff had paid the defendants an advance fee for performing a contractual service and then sued the defendants for failing to perform. On the other hand, in *Commerce Finance*,[16] payments made on the contract were voluntary and could not be recovered, where the purchaser of goods had waived her claim against the seller for breach of contract.

"The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply."[17] But

---

[11] Supra at 545-547 (1).

[12] Supra.

[13] Id. at 36.

[14] *Darby v. City of Vidalia*, 168 Ga. 842-843 (149 SE 223) (1929) (citations and punctuation omitted).

[15] Supra.

[16] Supra at 503 (2) (b), (c).

[17] *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 284 (1) (542 SE2d 640) (2000) (citation omitted).

[a] directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.[18]

Here, the evidence shows without dispute that Energy made an interim payment it was not contractually required to make, which it now seeks to recover, and that Standard later breached the parties' contract by (1) not allowing Energy to inspect a shipment of parts without first making payment and (2) abandoning performance of the contract. Because the interim payment was not required, in that sense it was voluntary. But the evidence shows that the money was tendered in partial payment of the final cost of the finished products while the contract was still being executed. As shown by *Broome*, the voluntary payment doctrine does not preclude recovery of payments made on an executory contract based on a theory that the party to whom the payments were made later breached the contract by failing to execute his final performance. Consequently, the trial court erred in granting Standard's motion for directed verdict on Energy's contract claim.

2. The court also erred in granting Standard's motion for directed verdict on Energy's claim for an award of attorney fees under OCGA § 13-6-11.

OCGA § 13-6-11 provides:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

Thus, "[i]f there is bad faith in the making or performance under the contract, attorney fees are authorized regardless of whether a bona fide controversy otherwise existed between the parties."[19]

---

[18] *Moran v. Kia Motors America*, 276 Ga. App. 96 (622 SE2d 439) (2005) (citations omitted).

[19] *Ryland Group v. Daley*, 245 Ga. App. 496, 499 (3) (537 SE2d 732) (2000) (citation, punctuation and emphasis omitted).

Further, whether or not the [defendant] acted in bad faith in its contractual relations is an issue for the jury to determine. Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in defendant's carrying out the provisions of the contract, that is, in how the defendant acted in his dealing with the plaintiff.[20]

Construed most favorably to Energy, the evidence authorized a jury to find that after sending Energy some parts that were not in compliance with contractual specifications, Standard shipped other parts COD, thereby breaching the parties' contract by requiring Energy to pay for the goods before inspecting them; and that Standard further breached the contract by not allowing Energy to thereafter inspect the parts, thereby unilaterally ceasing performance of its contractual obligations. "This evidence constitutes a sufficient basis upon which the jury could determine that [Standard] acted in bad faith in dealing with [Energy] under the contract and in performing under the provisions of such contract."[21]

*Judgment reversed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 4, 2008.

*David J. Merbaum*, for appellant.
*Hartley, Rowe & Fowler, Joseph H. Fowler*, for appellee.

---

[20] *Robert E. Canty Bldg. Contractors v. Garrett Machine & Constr.*, 270 Ga. App. 871, 873 (2) (608 SE2d 280) (2004) (citation omitted).

[21] Id. at 874 (citation omitted).