A10A1078. SOUTHERN MUTUAL CHURCH INSURANCE
COMPANY v. ARS MECHANICAL, LLC.

(703 SE2d 363)

MILLER, Chief Judge.

ARS Mechanical, LLC ("ARS") installed an air conditioning system at the Church of Greater Works, Inc. ("Church"), which resulted in extensive property damage. Thereafter, Southern Mutual Church Insurance Company ("Southern Mutual"), the Church's insurer, paid the Church for its loss. The Church filed suit against ARS asserting contract and negligence claims, and Southern Mutual

was later substituted as the real party plaintiff based on the Church's execution of an assignment in its favor. Southern Mutual appeals from the trial court's order granting summary judgment in favor of ARS, arguing that the trial court erred in applying the voluntary payment doctrine and the acceptance doctrine[1] to bar its action against ARS, and requiring it to pay costs to ARS. Finding that Southern Mutual had no contractual obligation to pay the Church for its loss and that its action was barred by the voluntary payment doctrine, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that in early 2004, Pastor Darryl Winston, the Church's head minister, asked Corey Hammonds, a member of the Church, to solicit a bid from ARS for the installation of an air conditioning system at the Church. Thereafter, Winston authorized Hammonds to accept a bid from ARS, and on May 15, 2004, Hammonds' company, Hammonds Properties, entered into a contract with ARS to install four HVAC systems for the Church. Sadat Nichols and Al Shepherd, co-owners of ARS, commenced work, which consisted of coring holes in the roof for fresh air intakes, installing flashing and air ducts, and placing tents to cover the holes. On the Friday before Memorial Day weekend, after coring the fourth hole, Nichols observed water "dripping from up under the roof" between the concrete slab and roofing material, and advised Winston that water "is penetrating the roof somewhere on the roof and getting up under [the] roof." Winston inspected the roof and directed Nichols to continue work.

During the Memorial Day weekend, it rained heavily, resulting in extensive water and property damage to several rooms in the

---

[1] This doctrine provides, subject to certain exceptions, that when an independent contractor's work "is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection." *Ogles v. E. A. Mann & Co., Inc.*, 277 Ga. App. 22, 24 (1) (625 SE2d 425) (2005).

Church in excess of $150,000. On May 30, 2004, Winston contacted Southern Mutual and reported that a tree limb had fallen on the Church's roof and caused the damage. The claim was assigned to claims manager John Rentiers, who in turn assigned the claim to J. R. Hood, a local adjuster with Custard Insurance Adjusters, Inc. On June 2, 2004, Hood inspected the Church's property and engaged a local contractor, Bill Day of Northridge Restoration, to inspect the Church's roof. Day inspected the roof and concluded that a tree limb had not caused the damage to the roof, but that "HVAC installers on the site had cut openings in the flat, built-up roof to install ductwork." He observed that the vent stacks previously installed by ARS were unprotected and unflashed, so he covered the stacks with blue plastic tarps to protect them from further infiltration. Northridge Restoration also engaged an engineer, Dan Sheehan, to inspect the roof, who also faulted ARS "for cutting holes in the roof and then applying the flashing incorrectly." These findings were contained in Hood's June 8, 2004 report to Southern Mutual. In subsequent reports dated June 26, 2004 and August 23, 2004, Hood affirmed that water infiltration was attributable to penetrations cut through the roof by HVAC technicians installing air ducts.

On or about July 7, 2004, Southern Mutual made a partial payment to the Church for its loss. Rentiers deposed that he usually reviews all the information from his investigation before determining the cause of a loss. As of August 4, 2004, he determined that the loss was caused by "holes cut in the roof by the HVAC company installing the air conditioner." Rentiers admitted in his deposition that "there is no provision[ ]" that covered the loss, but Southern Mutual made a voluntary payment so the Church could make its repairs. Rentiers explained that he "made a mistake[ ]" and "did not catch an exclusion in the policy."

On August 9, 2004, Southern Mutual notified ARS that it had paid the Church for damages resulting from ARS' negligence and would seek reimbursement for such payments. On December 17, 2004, Southern Mutual made a final payment to the Church.

On July 18, 2005, Winston executed a subrogation receipt to Southern Mutual, reciting that in exchange for a consideration of $154,596.72, he "agrees to present claim promptly, and if necessary, to commence, enter into and prosecute suit against such person through whose negligence or other fault the aforesaid loss was caused . . . in his own name." Winston further agreed to "appoint[ ] the managers and/or agents of [Southern Mutual] . . . with irrevocable power to collect any such claim or claims . . . and to execute in the name of [Winston,] any documents . . . necessary to carry the same into effect for the purpose of this agreement."

On April 30, 2007, the Church executed a written assignment in

favor of Southern Mutual, which provided:

> [Church] do[es] hereby assign[ ], transfer[ ] and forever release to [Southern Mutual] all claims, demands, rights and recoveries that may inure to [Church] in connection with [Church's] cause of action against [ARS] and its agents for damages arising out of an event on or about May 30, 2004 and which resulted in damages to the real and personal property of [Church] . . . and specifically agrees that any such cause of action may proceed in its name as plaintiff with all costs born by [Southern Mutual].

On June 4, 2007, the Church filed the instant action against ARS seeking damages for property damage, negligence and breach of contract. Thereafter, Southern Mutual was substituted as the real party plaintiff.

1. Southern Mutual argues that the trial court erred in granting summary judgment to ARS based on the voluntary payment doctrine because its action was based upon an assignment rather than a subrogation claim under the policy. Southern Mutual contends that its payments for the loss under its policy was irrelevant. We disagree.

"The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply." (Punctuation and footnote omitted.) *Energy &c. Corp. v. Jim Dally & Assoc., Inc.*, 291 Ga. App. 772, 775 (1) (662 SE2d 835) (2008). ARS argues that since Southern Mutual had no contractual obligation to pay the loss, the voluntary payment doctrine bars its recovery, irrespective of the assignment. We agree.

The general rule is that an insurer's voluntary payment to its insured does not give rise to a right of subrogation. See *Allianz Ins. Co. v. State Farm Fire &c. Co.*, 214 Ga. App. 666, 667 (449 SE2d 5) (1994) (insurer was a volunteer when it paid automobile loss despite express provision in its policy for nonpayment and was not entitled to subrogation); *Transport Ins. Co. v. Maryland Cas. Co.*, 187 Ga. App. 361, 363 (3) (370 SE2d 188) (1988) (subrogation "is never applied for the benefit of a mere volunteer who pays the debt of another . . . and who is under no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own") (citations and punctuation omitted); *Hartford Fire Ins. Co. v. Payne*, 28 Ga. App. 655 (112 SE 736) (1922) (insurer who paid loss and took assignment of insured's right of action against railroad could not recover damages as loss was not covered under the policy).

This rule is consistent with the voluntary payment doctrine in other contexts, i.e., when a payment is made without a contractual or

legal obligation to pay it, the payment is voluntary and the payment cannot be recovered. See *Emergency Professionals of Atlanta v. Watson*, 288 Ga. App. 473, 475 (1) (654 SE2d 434) (2007) ("no indemnity claim exists where party seeking indemnity was not legally obligated to make the payment"); *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 285 (1) (542 SE2d 640) (2000) (voluntary payment doctrine bars recovery of a late fee that was legally unenforceable).

Here, Rentiers admitted in his deposition that, as of August 4, 2004, the loss was not covered under any provision of the policy, and Southern Mutual voluntarily paid the Church "to make sure repairs were done," even though at one point Rentiers did not have a sworn proof of loss from the Church. Thus, when Southern Mutual made three payments to the Church between July and December 2004, it had no contractual obligation to do so. *Allianz*, supra, 214 Ga. App. at 667; *Transport*, supra, 187 Ga. App. at 363 (3); *Hartford*, supra, 28 Ga. App. at 655. And under its policy, Southern Mutual could not recover for a loss against a third party unless the loss was paid "under the covered property coverage." Nor has Southern Mutual demonstrated that there was a legal necessity for payment.

While Rentiers deposed that he made a mistake in paying the claim and did not catch an exclusion under the policy, Southern Mutual failed to come forward with evidence to show that "certain material facts were not known at the time of payment or a valid reason existed for failure to determine the truth." *Ins. Co. of North America v. Kyla, Inc.*, 193 Ga. App. 555, 556 (388 SE2d 530) (1989); OCGA § 13-1-13 ("[p]ayments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor"). See also *Cloppas v. Citizens & Southern Bank &c.*, 95 Ga. App. 365, 368 (1) (98 SE2d 153) (1957) ("mistake of fact exists when a material fact which really exists is unknown or when some fact is supposed to exist which really does not exist"); compare *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400 (349 SE2d 368) (1986) (undisputed evidence showed that plaintiff's payment to defendant was the result of a computer mistake). Prior to paying the Church, Southern Mutual had full knowledge of the facts pertaining to the loss, having received several reports from Hood. Based on such reports, Rentiers concluded, as did Hood, that ARS' work in coring the holes caused water infiltration into the Church.

Further, Southern Mutual mischaracterizes Rentiers' testimony that it paid the loss based on its company policy to resolve vague cases in favor of its insured. In his deposition, Rentiers was asked to

explain what exclusions may have applied given his testimony that he made a mistake in paying the claim. He testified about certain exclusions that he thought were applicable but indicated that he thought some provisions were vague. Thus, Southern Mutual's voluntary payment to the Church was not grounded in its company policy.

While the assignment transferred to Southern Mutual the Church's cause of action against ARS and allowed Southern Mutual to sue ARS directly (*State Farm &c. Ins. Co. v. Jones*, 98 Ga. App. 46 (104 SE2d 725) (1958) (assignment is a mere purchase of another's cause of action)), it effectuated a subrogation. See *Bankers Trust Co. v. Hardy*, 281 Ga. 561, 562 (640 SE2d 18) (2007) ("Subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to all rights of the creditor.") (footnote omitted). Based on the assignment, Southern Mutual was subrogated to "all claims, demands, rights, and recoveries" that the Church was entitled to bring against "ARS and its agents for damages arising out of an event on or about May 30, 2004 and which resulted in damages to the real and personal property of [Church]. . . ." Since Southern Mutual had no legal obligation to pay the Church, the fact it had an assignment does not change our result. Here, Southern Mutual is trying to recover the same amount from ARS that it paid for the loss. See *Hartford*, supra, 28 Ga. App. at 655; *Ga. Power Co. v. Foster Wheeler Corp.*, 161 Ga. App. 641, 642 (1) (288 SE2d 720) (1982) ("[t]he prohibition against recovering back voluntary payments is not avoided by doing it indirectly rather than directly") (citation omitted).

Southern Mutual further argues that *Ricketts v. Liberty Mut. Ins. Co.*, 127 Ga. App. 483, 488 (7) (194 SE2d 311) (1972), supports its argument that payments to the Church under its policy and the policy itself is irrelevant since its action is based upon an assignment. We disagree. In *Ricketts*, the insurance company obtained judgment against several defendants in a trover action for their conversion of a quantity of rugs to which the company had lawful title based upon assignments received from the rugs' owners. On appeal, defendants objected to the absence of the insurance policy under which the claims were paid, and we held that the policy was irrelevant because the trover suit was based upon the assignments. Id. at 488 (7). *Ricketts* is inapposite as it involved an assignment of a right to property, i.e., the rugs, not a cause of action. Further, the insurance company in *Ricketts* paid the claims after it was satisfied with the owners' proof of loss, apparently in accordance with its policy terms. Id. at 484. Here, Rentiers paid the claim without a contractual obligation to do so.

To the extent that Southern Mutual argues that it paid the

Church for its loss in exchange for the assignment, the record reflects otherwise. It is undisputed that the Church did not execute the assignment subrogating its cause of action and rights and recoveries to Southern Mutual until April 2007. Thus, Southern Mutual cannot argue that it was compelled to pay the Church for the preservation of its own rights or to satisfy any legal obligation. See *Bankers Trust*, supra, 281 Ga. at 564, n. 8 (subrogation arises only where a party "had some interest to protect or . . . where he advanced money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor") (citation omitted). Compare *Hibbard v. McMillan*, 284 Ga. App. 753, 756-757 (2) (645 SE2d 356) (2007) (plaintiff's payment of insurance premiums was intended to satisfy certain obligations under the parties' agreement to keep life insurance policy in effect and were recoverable); *Taylor v. Taylor*, 195 Ga. App. 711 (349 SE2d 628) (1990) (plaintiff was entitled to collect promissory notes as bank's assignee where bank transferred promissory notes to plaintiff following her payment of the face value of promissory notes plus interest to bank).

Based on the foregoing, Southern Mutual cannot recover from ARS as it was not legally or contractually obligated to pay the Church. *Allianz*, supra, 214 Ga. App. at 667; *Transport*, supra, 187 Ga. App. at 363 (3); *Hartford*, supra, 28 Ga. App. at 655. See also *Ga. Power*, supra, 161 Ga. App. at 642-643 (1) (voluntary payment doctrine applied to bar party's recovery of damages in tort where party did not show inapplicability of doctrine); compare *Read v. Benedict*, 200 Ga. App. 4, 9 (4) (406 SE2d 488) (1991) (voluntary payment doctrine did not preclude award of damages in suit grounded in tort when wife made payment to third party not involved in suit for the purpose of satisfying claim caused by malpractice).

2. In light of our disposition in Division 1, supra, we need not address Southern Mutual's assertion that the trial court erred in granting summary judgment to ARS based on the acceptance doctrine.

3. Further, the trial court did not err in awarding costs against Southern Mutual. See OCGA § 9-11-54 (d) ("Except where express provision therefor is made in a statute, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs[.]").

Therefore, we affirm the trial court's order granting summary judgment to ARS.

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 10, 2010.

*Rutherford & Christie, Carrie L. Christie, Andrea E. Dobur*, for appellant.

*Green & Sapp, Henry D. Green, Jr., Mary P. Adams*, for appellee.